JACOB B. DENZLER v. EMILY L. RIECKHOFF, Appellant, *et al.*, Defendants, Appellees.

**Evidence:** DELIVERY. Where the person to whom a deed was delivered, testified that the grantor deposited the deed with him to be delivered to the grantor's son after the grantor's death, and the grantor's wife, who had joined in the deed, disclaimed any interest in the land, and a large number of witnesses testified that the grantor declared that he absolutely disposed of the property to his son, there was sufficient evidence to prove a legal delivery.

**Homestead:** HUSBAND AND WIFE. The joining of a wife with her husband in the granting clause of a deed to a homestead, is sufficient, in Iowa, to convey her homestead interest.

**Practice:** AMENDMENTS. Code, 2689, allows amendments which do not change claims or defenses, to be made at any time. An answer resisted an action to quiet title, on the ground that plaintiff's deed was not delivered. *Held,* it was proper to reject an amendment to it

offered during trial, which set up that the deed was void on account of the homestead character of the land deeded.

KINNE, J., took no part.

## WEDNESDAY, JANUARY 29, 1896.

*Appeal from Iowa District Court.*—HON. M. J. WADE, Judge.

THIS is a suit in equity to quiet the plaintiff's title to certain real estate. The defendant Emily L. Rieckhoff filed an answer and cross petition in which she claimed to be the owner of two-fifths of the property, and she demanded a partition of the same. There was full hearing on the merits, and a decree was entered for the plaintiff, as prayed in the petition. Defendant Emily L. Rieckhoff appeals.—*Affirmed.*

*Struble & Stiger* and *Hedges & Rumple* for appellant.

*James H. Feenen, Baker & Ball,* and *S. H. Fairall* for appellees.

ROTHROCK, C. J.—I. The parties are children and grandchildren of Jacob Denzler, deceased, who was a farmer, and resided in Iowa county. He accumulated quite a large estate. He died in the year 1889, and left surviving him his widow, Verona Denzler, and five children. The children were the plaintiff herein, Jacob Denzler, and Henry Denzler, John Denzler, Caroline Schild, and Verona Rieckhoff. It will be observed from the names of the daughters, that they were married before the death of their father. Some years before his death, Jacob Denzler divided his real estate among some of his children. He and his wife executed deeds of the land he intended for his sons, Henry and John, and delivered the same directly to them.

They also executed a deed to the plaintiff herein for the land it was intended for him to have, and at the same time Denzler made a will, in which he provided a support for his wife in case she survived him, which support was to be the income or interest of sixteen thousand dollars during her life. It appears that the widow and the sons Jacob B. and John, and the daughter Caroline Schild, have been at all times satisfied with the disposition their father made of his property. The son Henry does not appear to have made any open resistance to it, but he and his sister Mrs. Rieckhoff, conveyed what they thought was their interest in the land claimed by plaintiff, to the appellant, Emily L. Rieckhoff, who is a daughter of Mrs. Rieckhoff, and she claims that the land in controversy was not at any time conveyed by Jacob Denzler and Verona Denzler to the plaintiff, and that, because it was undisposed of, she is now the owner of an undivided two-fifths of it. It will be observed that the whole controversy turns on the question whether the ancestor of these parties made a valid conveyance of the land to his son, the plaintiff herein. It is proper to say here that no claim is made that Jacob Denzler was in any way incapacitated by mental infirmity, from making such a disposition of his property as he thought proper. And there is no dispute that he and his wife executed a deed to the plaintiff for the land. We do not overlook the fact that counsel for appellant claims that the deed was void on account of an inaccuracy of the scrivener who wrote the deed, in the orthography of the wife's name. This is of such slight importance that it is unnecessary to set it out here. The deed, on its face, is a valid instrument.

II. The only real question in the case is whether there was a delivery of the deed. At the time it was prepared, signed and acknowledged, Denzler made his last will and testament. Both instruments were

left for some time with the scrivener who prepared them, when Denzler called for them and took them to a bank, of which James H. Branch was president, and handed them to Branch, who put them in an envelope, sealed it, and it remained there until after Denzler died, when Branch took the envelope to the office of the clerk of the district court, where it was opened, and the clerk filed the will as he was required to do by law, and Branch filed the deed for record in the recorder's office. It should further be stated that the plaintiff claimed to be the owner of the property by a verbal agreement made with his father before the deed was executed, under which agreement possession was given to the plaintiff, and improvements made on the land. After the trial had proceeded for two or three days, and the evidence had all been introduced, the appellant asked leave to file an amendment to her pleadings; setting up that the property in controversy was the homestead of Jacob Denzler and his wife, and that the verbal agreement and deed were void for that reason. The plaintiff objected to the amendment, and the objection was sustained. This ruling is the subject of complaint. The right to make the amendment was founded on section 2689 of the Code, under which amendments to the pleadings may be made at any time to conform the pleadings to the facts proved, when the amendment does not change substantially the claim or defense. The objection made to the amendment was that it did change the defense. We think the objection was well taken, and that the ruling of the court was correct. No mention had been made in any pleading as to the homestead right in the land, until it was sought to be claimed by this amendment. While it is true that the residence of Jacob Denzler and his wife was incidentally referred to in the evidence, yet whether, after the alleged oral

contract and deed were made, and possession given to the plaintiff, it was such a residence as constituted a homestead, was not a question in the case. Indeed, even the incidental reference to their remaining on the farm, in the family of the plaintiff, would render it very questionable whether the homestead existed at any time after possession was given to the plaintiff. The amendment was not founded upon facts which were not discovered by the plaintiff when the original pleadings were filed. We do not determine that the facts in evidence showed that the homestead was abandoned, but surely it would have been the right of the plaintiff to have introduced evidence upon that question, if the amendment had been allowed. The claim of the defendant that all the evidence upon that question had been introduced cannot be entertained. Counsel for defendant tried only one side of the case. There was no abuse of discretion in the ruling of the court. We will not cite cases. Citations would be mere repetition. Reference to the digests is sufficient. It is said that the deed is invalid on its face, because the wife merely released her dower interest. She did more than that. She joined her husband in the granting clause, and that was sufficient to convey the homestead.

III. We have now come to what we have said is the question in the case, and it requires very brief consideration. It was sought to show on the trial that the deed was not delivered, because it was not deposited with Branch to be delivered to the plaintiff after the death of Jacob Denzler. Upon this question of fact, we have no hesitancy in holding, with the learned district judge, that the position of the defendant is overthrown by a clear preponderance of the evidence. Branch testified, as a witness, that the deed was deposited with him for that purpose. It is true that he does not undertake to

give the language of Denzler when he delivered the deed to him, and no witness of ordinary memory would undertake to give the exact language of such an interview, after the lapse of a number of years. Branch was cross-examined at great length about this brief interview. Without question and answer, and as abstracted, the cross-examination extends over some seven or eight pages; and afterward Branch was called for further cross-examination, and after that it was proposed to cross-examine him again. When this proposition was made, the plaintiff objected, and the objection was sustained, and properly so. It is said that the defendants desired to cross-examine him the third time, so that they might lay the foundation for introducing an impeaching witness. Nearly the whole scope of the cross-examination was for that purpose, and the claimed conversation with the impeaching witness had already been referred to in the cross-examination. Whatever doubt may have been raised as to the truthfulness of the testimony of Branch, by supposed contradictory statements, it is all dispelled by the acts and conduct of the grantors in the deed. The widow not only concurred in the disposition of the property, but she joined her son in this suit by disclaiming any interest in the land. A large number of witnesses testified to facts showing unmistakably that Jacob Denzler intended that the conveyance to the plaintiff was an absolute disposition of the property. It is true, he did not state, in so many words, to any witness, that he had deposited the deed in the bank for his son; but he repeatedly stated that he had given the farm to the plaintiff, and he always spoke of it as an unconditional transaction. That a deposit of a conveyance with such an intention operates as a delivery of the instrument is not questioned. See *Trask v. Trask*, 90 Iowa, 318 (57 N. W. Rep. 841).

IV.　Objection is made because the court ordered the costs in the case taxed to the appellant. The objection is overruled. All the costs, except the filing fees, were occasioned by what the court determined was an unfounded defense to the action. —AFFIRMED.

KINNE, J., took no part.