GRACE N. GRUBER, Appellant, v. MAUDE McGLASSON GROOVER PALMER, Appellee.

No. 45471.

JUNE 17, 1941.

F. E. Northup, for appellant.

Boardman & Cartwright, for appellee.

OLIVER, J.—William D. Groover died December 25, 1935,

survived only by defendant, who was his widow, and by plaintiff, his daughter by his former wife who had been divorced from him in 1922. Though plaintiff and her father had continuously resided in Iowa, so many years had elapsed since she had seen or heard from him that she was unable to recall when she last saw him. In September 1928, defendant and decedent were married after a brief courtship and lived together, apparently happily, until his death. At the time of the marriage Mr. Groover was 57 or 58 years old. Defendant had several thousand dollars in cash and securities and owned a home in Marshalltown, mortgaged for $2,500, which defendant and decedent occupied after their marriage. Decedent owned a 180-acre farm near Marshalltown, mortgaged for $10,000. In February 1929, he gave defendant a quitclaim deed to this farm. However, this deed was not recorded until immediately after his death in 1935. The $10,000 mortgage was paid in 1930.

This action in equity was instituted by the daughter against the widow in 1939, to set aside the deed to the widow and in the alternative to establish a lien upon the land conveyed to the extent of two thirds of the amount paid by decedent in satisfaction of said mortgage. The petition alleged (1) mental incapacity of William D. Groover, (2) undue influence exerted by defendant, and (3) that the deed was not delivered. Trial to the court resulted in decree for defendant, from which plaintiff prosecutes this appeal.

A detailed discussion of the evidence relative to mental incapacity is unnecessary. There was an entire failure of proof of mental weakness or incapacity on his part at any time. No witness so testified. On the contrary there was an abundance of evidence that he was strong and sound mentally and active and competent in handling his business affairs.

Nor was he weak physically or suffering from any serious ailments at or immediately prior to the time the deed was drawn. He had undergone an operation about 1920, and thereafter did no heavy farm work although subsequently he did some work on his farm and as late as 1934 and 1935 helped build a machine shed upon it.

The family doctor was called to treat Mrs. Groover several times in 1929, and saw Mr. Groover frequently but he was ap-

parently then in good health and the doctor did not see him professionally. The first time the doctor attended Mr. Groover was in December 1931, next in 1933, and finally in 1935. Mr. Groover then had heart trouble but in the first part of his illness was able to get out and look after his affairs.

The evidence offered to show undue influence was not convincing. One circumstance suggested is that prior to the marriage Mr. Groover took appellee to the farm and introduced her to the tenant and that he told her about its rentals, the encumbrances upon it and his other property. Other matters relied upon are that during their married life she was permitted to draw checks on his bank account and that she helped him with his accounts and assisted him around the farm, the house and wherever she could. Under the circumstances it does not appear this conduct was improper. It was indicative of mutual affection, loyalty and cooperation rather than of domination of either over the other.

Appellee accompanied her husband to the lawyer's office where the deed was drawn and executed. The lawyer had previously represented both parties in other matters and may be assumed to have been acting for both in this matter. Therefore, it cannot be said he was then acting in the capacity of an independent adviser to Mr. Groover. But Mr. Groover was competent and strong mentally and apparently had already determined what he wanted to accomplish. There was evidence that his purpose in making the conveyance to appellee was that she would have something for her support in her old age. ''He wanted something fixed up so it couldn't be broken,'' and the lawyer told him the deed could not be broken. The $10,000 mortgage was paid in 1930. Part of the money was secured by mortgaging Mr. Groover's other holdings, part came from family savings and part was paid by appellee from her funds. While Mr. Groover lived he continued handling the renting of the farm. Rents collected were placed in the joint bank account and presumably were used for expenses and family purposes. There is no showing of anything unusual or unnatural in these transactions.

Appellant contends the evidence shows the deed was not delivered to appellee. We think the proof of delivery was

ample. Appellee testified her husband took the deed from the lawyer and handed it her. Other witnesses testified to statements of Mr. Groover that he had executed and delivered the deed. After its delivery appellee kept the deed in the safe in the home. That her husband also had access to the safe would not invalidate the previously completed delivery. See Stickles v. Townsend, 171 Iowa 697, 154 N. W. 307; 16 Am. Jur. 511.

The principal questions in this case are factual. The trial court saw and heard the witnesses and decided these questions against appellant. We think the record shows the conveyance of the real estate and the subsequent use of Mr. Groover's funds to assist in liquidating the mortgage indebtedness were free and voluntary acts on his part and were not the result of undue influence exerted by appellee. Browne v. Johnson, 218 Iowa 498, 255 N. W. 862. Our conclusion agrees with that of the trial court.

The decree is affirmed.—Affirmed.

All JUSTICES concur.