In the Matter of the ESTATE of Hester BRIGHT, Deceased.

Gene BRIGHT, Administrator of the Estate of Hester Bright, Deceased, and Earl Bright, Appellants,

v.

Madylee McELFISH et al., Appellees.

No. 55856.

Supreme Court of Iowa.

Feb. 20, 1974.

Robert C. Stewart, Leon, for appellants.

William H. Miles, Corydon, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

UHLENHOPP, Justice.

The question in this appeal is whether a grantor delivered two deeds. The suit is in equity. Code 1973, § 633.33. We hear the appeal de novo; although we give weight to the trial court's fact findings, we are not bound by them. Rule 344(f)(7), Rules of Civil Procedure. We eliminate from consideration any testimony to which proper objection was made and which is inadmissible by virtue of § 622.4 of the Code. After considering the evidence and the trial court's decree, we find the facts to be as follows.

Hester Bright, a widow, owned a farm of 120 acres in Decatur County, Iowa. Mrs. Bright and her late husband had a son, Paul Bright, who was killed in the service leaving no widow or descendants. They also had a daughter, Madylee McElfish, and a son, Earl Bright, both of whom survived Mrs. Bright. Madylee has two children, Claudia Paulette McElfish (now McIntosh) and Roy E. McElfish, who were minors at the time of the events in question. Mrs. Bright and her husband helped their son Earl buy two farms.

On May 13, 1962, Mrs. Bright had relatives take her to the office of Attorney R. B. Hawkins (now deceased). She had Mr. Hawkins prepare two deeds to her farm, in which she reserved a life estate in herself. In one deed she conveyed 40 acres of the farm to Madylee McElfish, and in the sec-

ond she conveyed the other 80 acres to Claudia Paulette McElfish and Roy E. McElfish. She took the deeds home with her.

About a week later, Mrs. Bright went to the home of Madylee McElfish and entered the bedroom where Madylee was at the time. Testimony as to what then transpired is barred by the dead man's statute, but when the women emerged from the bedroom Madylee was carrying the deeds. Madylee was then heard to say she had no place to keep the deeds, and Mrs. Bright stated she would put them in her bank box.

Mrs. Bright had a box in a bank in Mercer, Missouri. The box contained her private papers and papers belonging to Madylee. Mrs. Bright placed the deeds in that box, and on June 25, 1962, she signed a document at the bank appointing Madylee as her deputy "to have access to, control over and the right to withdraw contents of box rented to the undersigned until this authority is revoked in writing." Mrs. Bright never revoked the appointment, but she retained the two keys to the box. At one time she examined the box to make sure the deeds were there. The bank did not permit joint tenancy of bank boxes.

Later Mrs. Bright told another woman that she had deeds made and "Earl would probably be mad." She also told a neighbor she had deeded the farm to "Madylee and the two kids."

Mrs. Bright died on April 23, 1970. The two deeds were in the bank box. When administration proceedings upon her estate were later opened, the parties agreed to have the deeds withdrawn from the box. Later the grantees caused the deeds to be recorded.

Earl Bright and the administrator of Mrs. Bright's estate brought the instant declaratory judgment proceeding seeking an adjudication that Mrs. Bright did not deliver the deeds and that the land did not pass under them. The trial court reviewed the evidence and made this fact-finding:

The Court finds that the deeds were delivered by Hester Bright to Madylee McElfish. That she had these delivered to her for herself and her children. That Hester Bright had the intent to make a present delivery of the deeds and title to the grantees reserving in herself a life use of the property.

The court therefore held for the grantees.

■■■■ Earl and the administrator appealed, asserting several propositions. One is that the witnesses did not sufficiently identify the deeds they saw as the ones Mrs. Bright executed. We have examined the record in the light of the parties' opening stipulation as to the execution of the two deeds, exhibits 1 and 2, and find that the evidence is sufficient on identification. Another proposition is that the trial court relied on testimony which is inadmissible under the dead man's statute. But the proceedings show the contrary. Still another proposition is that the trial court should have placed the burden of proof of delivery on the grantees and not on Earl and the administrator. For reasons which we will state, this proposition does not change the result. Another proposition is that the deeds were not executed with the formalities of a will. This is true, but they were sufficient in form as inter vivos deeds, and the grantees rely on them only as such. The final proposition, and the central issue in the case, is that the evidence does not show Mrs. Bright delivered the deeds.

■■■■ A deed, although complete in form and executed, does not transfer ownership of land unless the grantor, or someone with his authority, places it in effect by delivery. Delivery has two components: some conduct, by word or act, committed with the intent that the deed shall thereby pass title. 23 Am.Jur.2d Deeds §§ 78 at 131, 79 at 132, 82 at 134; 26 C.J.S. Deeds § 41 at 673–679.

The question here is largely one of fact as to whether Mrs. Bright delivered the deeds. The evidence does not show deliv-

ery at the office of the scrivener, and his testimony is unavailable. Soon afterward, however, Mrs. Bright came to Madylee's house. Here too the proof is incomplete due to interposition of the dead man's statute. But the evidence shows that Mrs. Bright had the deeds when she went into the bedroom where Madylee was, and that Madylee had them when the two women emerged. We infer that Mrs. Bright placed them in Madylee's possession. Here was conduct constituting one component of delivery.

■ Did Mrs. Bright thereby intend to make the deeds presently effective? We think so, especially when subsequent events are considered which bear on her intent. The first event was Madylee's statement when the women emerged that she had no place to keep the deeds, and Mrs. Bright's response that she would put them in her bank box. That Madylee had a problem of safekeeping indicates the deeds had been delivered to her. Placing a deed in the grantor's custody for safekeeping does not nullify a delivery. Gruber v. Palmer, 230 Iowa 587, 298 N.W. 926.

A second event was Mrs. Bright's appointing Madylee deputy of the bank box, with access to it. A third was Mrs. Bright's later statement that she had made deeds to the farm, related at the trial by a witness. A fourth was her statement to a neighbor that she had deeded the farm to Madylee and the children.

We consider all this evidence in the light of Mrs. Bright's reservation in the deeds of the life use of the farm. The reservation casts a special light on the case, under the decisions of this court. Dyson v. Dyson, 237 Iowa 1285, 25 N.W.2d 259; McKemey v. Ketchum, 188 Iowa 1081, 175 N.W. 325; Collins v. Smith, 144 Iowa 200, 122 N.W. 839.

■ We thus reach the same finding on the facts as the trial court did. Mrs. Bright delivered the deeds. The facts are very similar to those in two decisions of this court holding that delivery was established. Hilliard v. Hilliard, 240 Iowa 1394, 39 N.W.2d 624; Miller v. Armstrong, 234 Iowa 1166, 15 N.W.2d 265. In reaching our finding, we are not unaware of evidence pointing the other way, such as Mrs. Bright's retention of the keys to the bank box and her examination of the box at one time to make sure the deeds were there.

■ One of the deeds delivered to Madylee was for her children, but a deed may be placed in effect by delivery to a third person if the grantor intends that the grantees shall have the benefit of the deeds, as we think Mrs. Bright did intend. 23 Am.Jur.2d Deeds § 96 at 147–148; 26 C.J.S. Deeds § 43 at 689. In such case the question is really one of acceptance rather than delivery, and "[w]here a deed conveying land to an infant is delivered to the mother for the infant, the law presumes an acceptance for the benefit of the child. . . ." 23 Am.Jur.2d Deeds § 112 at 161. See also 26 C.J.S. Deeds § 51 at 709.

After the court reviewed the evidence and found the facts as we have quoted from the decree, the court stated that delivery was presumed and the evidence did not overcome the presumption. Earl and the administrator claim the trial court thereby incorrectly placed the burden of proof on them. We need not decide whether we would presume delivery here or who had the burden of proof. Casting any presumption of delivery aside and placing the burden of proof on the grantees, we hold on the evidence that they established delivery.

Affirmed.